UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 13-23050-CIV-COOKE/Turnoff

CECILIO JEFF and MARCELINO VALDES,

   Plaintiffs, on behalf of themselves and all
   others similarly situated,

vs.

ALLIED AVIATION, LLC., ALLIED
AVIATION FUELING OF MIAMI, INC.,
ALLIED AVIATION HOLDINGS
CORPORTION, and ROBERT L. ROSE,
individually,

   Defendants.
_____/

## FIRST AMENDED COMPLAINT

Plaintiffs, CECILIO JEFF ("JEFF") and MARCELINO VALDES ("VALDES"), along with the Sixteen (16) Opt-In Plaintiffs who have joined this action by filing Consents to Join to date, and any other similarly situated employees who may join this action ("Plaintiffs"), by their attorneys, Jaffe Glenn Law Group, P.A. and Shavitz Law Group, P.A., upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### INTRODUCTION

1.    Plaintiffs bring this lawsuit as a collective action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"), on behalf of themselves and all other persons similarly situated who suffered damages as a result of Defendants' violations of the FLSA.

2.    During the three (3) year statute of limitations period, Defendants willfully

1

violated the FLSA by failing to pay Plaintiffs and the other similarly situated employees for all of their actual overtime hours worked based upon Defendants' unlawful policies and practices as more fully described below. While Defendants paid Plaintiffs and the similarly situated employees for *some* of their overtime hours worked, Defendants failed to pay Plaintiffs and others similarly situated for *all* actual overtime hours worked, based upon Defendants' failure to credit Plaintiffs and other similarly situated employees for all of their hours worked (i) at the beginning and/or end of their shifts and (ii) during their purported meal break periods (collectively, this uncompensated overtime work performed by Plaintiffs will be referenced as "Shorted Hours Overtime").

3. Plaintiffs have retained the law offices of Jaffe Glenn Law Group P.A. and Shavitz Law Group, P.A. to represent them in this matter.

## THE PARTIES

*Plaintiffs*

4. Plaintiff JEFF works for Defendants at Miami International Airport (MIA), located in Miami-Dade County, Florida, as a non-exempt hourly mechanic, along with the similarly situated Opt-In Plaintiffs.

5. JEFF has worked for Defendants as a non-exempt hourly mechanic at Defendants' MIA location since approximately August 2006 and continues to work for Defendants to date.

6. JEFF's current regular rate of pay is approximately $16.61 per hour.

7. JEFF's primary duties as a mechanic for Defendants have consisted of repair and maintenance of airplane fueling equipment and trucks, including inspections, quality control of

fuel receipts, preventive maintenance, filter changes, meter changes, meter calibrations, and maintenance checks associated with tanks, pumping and hydrant systems.

8.     Plaintiff VALDES works for Defendants at their Miami International Airport (MIA) location in Miami-Dade County, Florida, as a non-exempt hourly tank farm operator, a/k/a fuel operator, along with the similarly situated Opt-In Plaintiffs.

9.     VALDES has worked for Defendants as a non-exempt hourly tank farm operator, a/k/a fuel operator, at Defendants' MIA location since approximately August 2005 and continues to work for Defendants to date.

10.    VALDES' current regular rate of pay is approximately $12.62 per hour.

11.    VALDES' primary duties as a tank farm operator, a/k/a fuel operator, for Defendants have consisted of the receiving and dispatching of jet fuel via pipeline and/or tanker truck, performing quality control tests on product (i.e., jet fuel), transferring of product and monitoring storage tanks, pipelines, logging entries of fuel transactions, quality control, and maintenance.

12.    In addition to the named Plaintiffs, the Sixteen (16) Opt-In Plaintiffs who have joined this action currently work, or have worked, for Defendants at their Miami International Airport location in Miami-Dade County, Florida, the scope of this collective action includes all of Defendants' non-exempt hourly mechanics, tank farm operators, a/k/a fuel operators, line technicians, a/k/a hydrant system operators, utility workers, and all similarly situated employees however variously titled, who have worked at any of Defendants' locations at any airport throughout the United States during the three (3) year statute of limitations period but have not been paid for all of their actual overtime hours worked.

13. Plaintiffs JEFF and VALDES have previously filed Consents to Join with this Court, see D.E. # 4 & 25.

*Defendants*

14. Defendants, ALLIED AVIATION, LLC, ALLIED AVIATION HOLDINGS CORPORATION, and ALLIED AVIATION FUELING OF MIAMI, INC. (collectively "Allied"), are entities incorporated in Florida with an executive office located at 4120 Higel Avenue, Sarasota, Florida, 34242 and a corporate office located at 462 7th Avenue, 17th Floor, New York, New York 10018.

15. At all times material to this action, Allied and the individual Defendant, ROBERT ROSE, have owned and operated a business providing fueling services for the commercial aviation industry at some of the largest airports in the United States, the Caribbean, and Latin America. In addition, at all times material to this action, Allied and Defendant ROSE have also owned and operated pipelines and tank farms.

16. Based upon information and belief, Defendants have employed hundreds of non-exempt hourly mechanics, tank farm operators, a/k/a fuel operators, line technicians, a/k/a hydrant system operators, and utility workers at any given time throughout Defendants' airport locations across the United States.

17. Based upon information and belief, including not limited as Allied affirmatively holds itself out to the public at Defendants' corporate website located at http://www.alliedaviation.com/locations/locations.html, Allied has operated at approximately Fifteen (15) airports throughout the United States, including but not limited to: (1) Hartsfield Jackson International Airport in Atlanta, Georgia (ATL); (2) Charleston International Airport in Charleston, South Carolina (CHS); (3) Dallas/Ft. Worth International Airport in Dallas, Texas

4

(DFW); (4) Ronald Reagan Washington National Airport in Washington, D.C. (DCA); (5) Newark Liberty International Airport in Newark, New Jersey (EWR); (6) George Bush International Airport in Houston, Texas (IAH); (7) John F. Kennedy International Airport in Jamaica, New York (JFK); (8) LaGuardia Airport in New York, New York (LGA); (9) Kansas City International Airport in Kansas City, Missouri (MCI); (10) Miami International Airport in Miami, Florida (MIA); (11) Theodore Francis Green State Airport in Providence, Rhode Island (PVD); (12) San Diego International Airport in San Diego, California (SAN); (13) San Antonio International Airport in San Antonio, Texas (SAT); (14) Sacramento Airport in Sacramento, California (SMF); and (15) Lambert-St. Louis International Airport in St. Louis, Missouri (STL).

18.  At all times material to this action, ROBERT L. ROSE, individually, has served as Allied's President and has managed, owned and/or operated ALLIED AVIATION, LLC, ALLIED AVIATION FUELING OF MIAMI, INC., and ALLIED AVIATION HOLDINGS CORPORATION ("Allied"), and regularly exercised the authority to hire and fire employees, determine the work schedules of employees, set the rate of pay of employees, and control the finances and operations of Allied.  By virtue of such control and authority, ROBERT L. ROSE, individually, is an employer of Plaintiffs and the similarly situated employees as such term is defined by the Act.  29 U.S.C. §201 et seq.

## JURISDICTION AND VENUE

19.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1332, and by 29 U.S.C. § 201, *et. seq*.

20.  This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5

21. Venue is proper in the District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Defendants are subject to personal jurisdiction in this district.

22. At all times material to this action, Plaintiffs JEFF and VALDES performed non-exempt duties for the Defendants in Miami-Dade County, Florida, within the jurisdiction and venue of this Court.

23. At all times material to this action, ALLIED AVIATION, LLC, ALLIED AVIATION HOLDINGS CORPORATION, and ALLIED AVIATION FUELING OF MIAMI, INC., have had two (2) or more employees who have regularly sold, handled, or otherwise worked on goods and/or materials that had been moved in or produced for commerce.

24. Based upon information and belief, the annual gross sales volume of ALLIED AVIATION, LLC, ALLIED AVIATION HOLDINGS CORPORATION, and ALLIED AVIATION FUELING OF MIAMI, INC., individually and/or collectively, was in excess of $500,000.00 per annum at all times material hereto.

25. At all times material to this action, ALLIED AVIATION, LLC, ALLIED AVIATION HOLDINGS CORPORATION, and ALLIED AVIATION FUELING OF MIAMI, INC., individually and/or collectively, have constituted an enterprise engaged in interstate commerce or in the production of interstate goods for commerce as defined by the Act, 29 U.S.C. §§ 203(r) and 203(s).

26. Defendant ROBERT L. ROSE, individually, directly or indirectly has acted in the interest of an employer towards Plaintiffs and other similarly situated employees at all material times, including without limitation directly or indirectly controlling the terms of employment of Plaintiffs and other similarly situated employees.

27. All Defendants are within the personal jurisdiction and venue of this Court. Defendants directly or indirectly acted in the interest of an employer towards Plaintiffs and other similarly situated employees' at all material times, including without limitation directly or indirectly controlling the terms of employment of Plaintiffs and other similarly situated employees.

28. Throughout the three (3) year statute of limitations period, Defendants employed Plaintiffs and similarly situated employees within the meaning of the FLSA. Defendants have substantial control over Plaintiffs' working conditions and the unlawful policies and practices alleged herein.

29. At all times material to this action, ALLIED AVIATION, LLC, ALLIED AVIATION HOLDINGS CORPORATION, and ALLIED AVIATION FUELING OF MIAMI, INC. have shared employees, had common management and/or ownership and/or acted in the direct interest of each other towards a collective interest while exercising common control over operations and therefore constitute joint employers of Plaintiffs and the other similarly situated employees as such term is defined by the FLSA, 29 U.S.C. §203(d).

## FACTS COMMON TO ALL CLAIMS

*The Asserted Class*

30. The named Plaintiffs and most of the Opt-In Plaintiffs to date are current employees of Defendants. Accordingly, the violations described herein relate back to the three (3) years preceding the filing of this action.

31. For purposes of the FLSA, the Asserted Class is defined as follows:

All non-exempt hourly mechanics, tank farm operators, a/k/a fuel operators, line technicians, a/k/a hydrant system operators, utility workers, and similarly situated employees however variously titled, who have worked at any of Defendants' locations at any airport throughout the United States during the three (3) year

statute of limitations period.

*Plaintiffs' Shorted Overtime Hours Claims*

32.  During the three (3) statute of limitations period between approximately August 2010 and August 2013,[1] Plaintiff JEFF was scheduled to regularly work five (5) days per week from 6:00 a.m. to 2:30 p.m. for a total of 40.0 hours per week after meal breaks were to have occurred.  However, during any work week that he worked at least 5 days/shifts throughout that time, Plaintiff JEFF alleges that he actually worked at least 42.0 hours, including an average of approximately two (2.0) overtime hours for which he was not compensated, because (a) he worked a longer shift than he was scheduled (e.g. started working before 6:00 a.m.); and (b) he worked during his purported meal break periods.

33.  During work weeks that he worked at least five (5) days/shifts between approximately August 2010 and August 2013, Plaintiff JEFF worked overtime, including overtime hours for which he was not compensated at all by Defendants.

34.  During the overtime hours which Plaintiff JEFF worked but was not compensated by Defendants between approximately August 2010 and August 2013, Plaintiff JEFF performed his usual duties as a mechanic repairing and maintaining airplane fueling equipment and trucks, doing inspection work, preventive maintenance, filter changes, meter changes, meter calibrations, and/or maintenance checks associated with tanks, pumping and hydrant systems.

35.  Plaintiff JEFF estimates that for each work week that he worked at least five (5) days/shifts for Defendants between August 2010 and August 2013, his average amount of uncompensated wages due being shorted Overtime hours worked for Defendants to be

---

[1] Based upon information and belief, it is believed that in or around August 2013, Defendants implemented changes to their timekeeping and compensation policies and practices.

approximately $49.84 per week [two (2.0) hours of unpaid overtime per week at an overtime rate of $24.92/hour ($16.61/hour x 1.5)].

36.     During the three (3) statute of limitations period between approximately October 2010 and August 2013, Plaintiff VALDES was scheduled to regularly work five (5) days per day from 6:00 a.m. to 2:30 p.m., for a total of 40.0 hours per week after meal breaks were to have occurred.  However, during any work week that he worked at least five (5) days/shifts, Plaintiff VALDES actually worked 43 hours because (a) he worked a longer shift than he was scheduled (e.g. before 6:00 a.m.); and (b) he worked during his purported meal break period.

37.     During work weeks that he worked at least five (5) days/shifts between approximately October 2010 and August 2013, Plaintiff VALDES worked overtime, including overtime hours for which he was not compensated at all by Defendants.

38.     During the overtime hours which Plaintiff VALDES worked but was not compensated by Defendants between approximately October 2010 and August 2013, Plaintiff JEFF performed his usual duties as a tank farm operator, a/k/a fuel operator, receiving and dispatching jet fuel via pipeline and/or tanker truck, testing product, transferring product and monitoring storage tanks, pipelines, logging entries of fuel transactions, and carrying out maintenance.

39.     Plaintiff VALDES estimates that for each work week that he worked at least five days/shifts for Defendants between approximately October 2010 and August 2013, his average amount of uncompensated wages due to being shorted Overtime hours worked for Defendants to be approximately $56.79 per week [an average of three (3) unpaid hours of overtime per week at an overtime rate of $18.93/hour ($12.62 x 1.5 = $18.93/hour)].

9

### *Defendants' Shorted Hours Overtime Violations Across the Class*

40. Plaintiffs and the members of the Asserted Class have worked overtime hours for Defendants during the statute of limitations period but not been fully compensated for the full extent of their overtime hours worked as a result of Defendants shorting overtime compensation.

41. Defendants are aware that Plaintiffs and the Asserted Class members worked overtime hours for which they were not compensated, yet Defendants failed to pay them all of their overtime compensation by failing to credit them for all of the hours they work over 40 in a workweek and suffering or permitting Plaintiffs and the Asserted Class members to work overtime hours for the benefit of Defendants.

42. Defendants maintain time records for all of their non-exempt hourly mechanics, tank farm operators, a/k/a fuel operators, line technicians, a/k/a hydrant system operators, utility workers, and other similarly situated employees, however variously titled, at all of Defendants' airport locations throughout the United States.

43. At all times material to this action, Defendants utilized a time management system that allowed Defendants to keep completely automated time and attendance solutions and to reduce labor costs by enforcing pay and work rules across the United States at all of Defendants' airport locations.

44. Although Defendants' time management system was, in theory and/or its premises, designed to promote compliance with the law, regulations, and other applicable requirements, Defendants intentionally manipulated the time management system to fail to credit Plaintiffs and the Asserted Class members for all of their overtime hours worked.

45. This failure to credit Plaintiffs and the Asserted Class members for all of their actual overtime hours worked occurred in at least two (2) ways: one, meal break deductions

(hereinafter also referred to as a "meal break"); and two, Defendants' rounding policies, or failing to compensate Plaintiffs for the full extent of their actual hours worked before and/or after their scheduled shift times.

46.     As to the meal break deductions, Defendants prohibited Plaintiffs and the Asserted Class members from clocking in and out for meal break period.

47.     Instead, Defendants deducted 30 minutes each day from the total hours worked each day by Plaintiffs and the Asserted Class members, ostensibly for a meal break. This 30 minute deduction was made regardless of whether Plaintiffs and the Asserted Class members actually received a bona fide meal break.

48.     Plaintiffs and the Asserted Class members worked through their meal breaks until approximately August 2013, at least three (3) to four (4) days each work week, performing work for the benefit of Defendants, and accordingly did not receive a bona fide meal break. The compensable work performed by Plaintiffs and the Asserted Class members during their meal breaks includes their usual value-added duties, specifically, the airport and aircraft services described herein.

49.     As to the rounding policy, Defendants' changes to the their time management system caused the system to automatically round off the start and stop times for Plaintiffs and the Asserted Class members to the *scheduled* start and stop times, thereby failing to credit, and compensate, Plaintiffs and the Asserted Class members for all their hours *actually* worked, including and most significantly, all of their overtime hours worked.

50.     While Defendants did pay Plaintiffs and the Asserted Class members for *some* overtime hours worked, they failed to pay for the Off-the-Clock Overtime worked, based upon (a) the failure to pay for meal breaks during which Plaintiffs and the Asserted Class members

11

performed compensable work predominantly for the benefit of Defendants; and (b) the rounding policies which failed to credit Plaintiffs and the Asserted Class members for their actual hours worked and instead only have credited and continue to credit them for their scheduled – as opposed to *actual* – hours which they were required to work beyond their scheduled hours.

51. Based upon the unlawful meal break deduction and rounding policies described herein, Defendants failed to keep accurate records of hours worked by Plaintiffs.

### **FLSA COLLECTIVE ACTION FACTS**

52. Plaintiffs bring this collective action pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of themselves and the Asserted Class who have worked for Defendants at any airport location in the United States on or after August 23, 2010 and who elect to opt-in to this action (the "FLSA Collective").

53. All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

54. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a. willfully failing to pay Plaintiffs and the members of the FLSA Collective overtime wages for all of the hours that they worked for the predominant benefit of Defendants in excess of 40 hours per workweek; and

   b. willfully failing to record all of the time that Defendants' employees, including Plaintiffs and the FLSA Collective, have worked for the predominant benefit of Defendants.

55. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and members of the FLSA Collective an overtime premium for all hours worked in excess of 40 per workweek.

56. Plaintiffs and the FLSA Collective all perform or performed the similar duties of value-added services by Defendants' non-exempt hourly mechanics, tank farm operators, a/k/a fuel operators, line technicians, a/k/a hydrant system operators, utility workers, and all similarly situated employees however variously titled.

57. Plaintiffs and the FLSA Collective all were compensated on an hourly basis.

58. Plaintiffs and the FLSA Collective all were subject to the same employment policies, procedures and practices as centrally disseminated by Defendants.

59. Defendants' unlawful conduct has been widespread, repeated, and consistent.

## COUNT I
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

60. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

61. Defendants have engaged in a widespread pattern and practice of violating the FLSA, as described in this First Amended Complaint.

62. Plaintiffs have consented in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

63. At all times material to this action, Plaintiffs and other similarly situated current and former employees were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

64. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Defendants.

65. Defendants are each employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

66. At all times material to this action, Plaintiffs were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

67. Defendants have failed to pay Plaintiffs and other similarly situated current and former employees all of the overtime wages to which they were entitled under the FLSA.

68. Defendants' violations of the FLSA, as described in this First Amended Complaint, have been willful and intentional. Defendants have failed to make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and other similarly situated current and former employees.

69. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

70. As a result of Defendants' willful violations of the FLSA, Plaintiffs and all other similarly situated employees have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq*.

71. As a result of the unlawful acts of Defendants, Plaintiffs and other similarly situated current and former employees have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury as to all issues so triable.

Dated: December 30, 2013  
       Boca Raton, Florida

Respectfully submitted,

**/s/KEITH M. STERN**
Keith M. Stern, Esq.
Florida Bar No. 321000
E-mail: kstern@shavitzlaw.com
Gregg I. Shavitz, Esq.
Florida Bar No.: 11398
E-mail: gshavitz@shavitzlaw.com
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile:  (561) 447-8831
*Attorneys for Plaintiffs*

Andrew Ira Glenn, Esq.
Florida Bar No. 577261
E-mail: aglenn@jaffeglenn.com
Jodi J Jaffe, Esq.
Florida Bar No. 865516
E-mail: jjaffe@jaffeglenn.com
JAFFE GLENN LAW GROUP, P.A.
Lawrence Office Park
Building 2, Suite 220
168 Franklin Corner Road
Lawrenceville, New Jersey 08648
Tel (201) 687-9977
Fax (201) 595-0308
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on **December 30, 2013**.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

**s/KEITH M. STERN**
Keith M. Stern

**SERVICE LIST**
**Cecilio Jeff, et al. v. Allied Aviation, LLC et al.**
**CASE NO: 13-23050-CIV-COOKE/Turnoff**
**United States District Court for the Southern District of Florida**

Donna Maria Griffin, Esq.
Email: donna@suarezgriffin.com
SUAREZ GRIFFIN, PL
14115 Stilton Street
Tampa, FL 33626
Tel: (813) 433-9003
Fax: (813) 287-5757
Attorneys for Defendants
Served via CM/ECF