UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 13-23050-CIV-COOKE/Torres

CECILIO JEFF and MARCELINO VALDES,

   Plaintiffs, on behalf of themselves and all
others similarly situated,

vs.

ALLIED AVIATION, LLC, ALLIED
AVIATION FUELING OF MIAMI, INC.,
ALLIED AVIATION HOLDINGS
CORPORTION, and ROBERT L. ROSE,
individually,

   Defendants.
_____

**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT
AND DISMISS CASE WITH PREJUDICE**

      Plaintiffs, CECILIO JEFF and MARCELINO VALDES, Opt-In Plaintiffs, ENRIQUE CONSUEGRA, ORESTE DOMINGUEZ, GETHO ESTIMAR, LUIS GOMEZ, RAMIRO GONZALEZ, JOSE HERMOSILLA, CARLOS HURTADO, JEAN DAVID ISMAR, DOUGLAS JEAN-PIERRE, JEAN RODRIQUEZ LARIVEAUD, JOSEPH METELLUS, ALBRECHT REYES ORTEGA, RAUL PINEIRO, FAN FAN RAPHAEL, MICHEL SAINT-JOY, JEAN SALVANT, AND JEAN VILFRANC, and Defendants, ALLIED AVIATION, LLC., ALLIED AVIATION FUELING OF MIAMI, INC., ALLIED AVIATION HOLDINGS CORPORTION, and ROBERT L. ROSE (hereinafter referred to as "The Parties"), by and through their respective undersigned counsel and pursuant to the Court's October 29, 2014 Order [D.E. #60] and the settlement reached by the parties, hereby file this Joint Motion to Approve

Settlement Agreement and Dismiss this Case with Prejudice, and state the following in support thereof:

## I.     Procedural History and Factual Background

On August 28, 2013, the original Complaint was filed in this case pursuant to the Fair Labor Standards Act (FLSA) seeking the recovery of unpaid overtime wages and other relief from Defendants. [D.E. #1]. On December 30, 2013, Plaintiffs filed their First Amended Complaint on behalf of themselves and Opt-In Plaintiffs who have worked for Defendants at Miami International Airport as non-exempt hourly mechanics, tank farm operators, a/k/a fuel operators, line technicians, a/k/a hydrant system operators, and utility workers, alleging that Defendants failed to pay overtime time compensation for *all* actual hours worked in excess of 40 hours per week based upon Defendants' alleged failure to credit Plaintiffs and Opt-In Plaintiffs for their hours worked (i) at the beginning and/or end of their shifts and (ii) during purported meal break periods, for which Defendants automatically deducted 30 minutes per day. [D.E. #40].

On January 14, 2014, Defendants filed their First Amended Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint denying the allegations raised by Plaintiffs and Opt-In Plaintiffs. [D.E. #43]. Between March 2014 and October 2014, the Parties conducted extensive discovery, with the two (2) named Plaintiffs as well as seventeen (17) Opt-In Plaintiffs answering Interrogatories, Requests for Production of Documents, and producing documents to Defendants. Similarly, Defendants took several depositions, answered Interrogatories, Requests for Production of Documents and produced documents regarding Plaintiffs' and Opt-In Plaintiffs' employment with Defendants encompassing more than 15,000 pages of personnel records, time records, and other key employment records for Plaintiffs and Opt-In Plaintiffs.

As the Parties previously notified the Court in June 2014 in connection with their enlargement request of pretrial deadlines in this matter, because Defendants utilize paper-based time keeping (physical time cards) and compensation records, the thousands of pages of documents Plaintiffs obtained in discovery had to not only be retrieved and photocopied but ultimately compiled into an Excel spreadsheets in order to manually input and the daily start times, stop times, total hours, and weekly hours worked by Plaintiffs and Opt-In Plaintiffs as part of reconciling the tens of thousands of entries during the time periods at issue between late 2010, 2011, 2012, 2013 and 2014 against Defendants' compensation records reflecting the wages actually paid to Plaintiffs and Opt-In Plaintiffs.

In July 2014, nine depositions were taken, and on August 20, 2014, the parties participated in a full day of Mediation with Mediator Neil Flaxman, Esquire. Following Mediation, counsel for Plaintiffs and counsel for Defendants continued extensive settlement discussions until a final compromise was agreed upon in October 2010, after which the parties' Settlement Agreement was drafted, revised, and finally executed after the more than twenty (20) individuals with interests in this litigation had to be consulted to review and sign the Agreement.

**II**.     **Legal Principles Governing FLSA Settlements**

In agreeing upon the settlement reached herein, the parties advise the Court that they obtained sufficient information to allow them to make informed decisions after having had the opportunity to analyze the respective claims of the two (2) named Plaintiffs, the Seventeen (17) Opt-In Plaintiffs, and Defendants' defenses. As the Eleventh Circuit held in *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982),

> "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . .

> . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."

Id. at 1352-53.

More specifically, an employee may settle and release FLSA claims against an employer if (1) the parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement, or (2) the parties can resolve an FLSA case for back pay if the Plaintiff is paid in full the amount owed without compromise. In the second situation, court approval of the settlement agreement is not required. *See Lynn's Food*, 79 F.2d at 1353; *Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003).

**III.    Terms of Settlement**

Pursuant to the Parties' settlement, it is respectfully submitted that Plaintiffs and Opt-in Plaintiffs will each receive 45% of their individualized damages calculations. This settlement is based upon (1) the extensive discovery conducted, (2) Plaintiffs' Counsel's review with Plaintiffs and Opt-In Plaintiffs of the actual time and compensation records produced by Defendants, (3) the conflicting deposition testimony from various employees about whether—and the extent to which—some employees did, and did not, perform work before or their scheduled shift times, or during thirty-minute meal breaks; and (4) review of the spreadsheets prepared by Plaintiffs' Counsel of the Plaintiffs' and Opt-In Plaintiffs' actual hours worked. To this end, the damages analyses prepared for the two (2) named Plaintiffs and seventeen (17) Opt-In Plaintiffs was calculated based upon (a) crediting employees' time to minute of each

4

electronic time stamp entry for the daily start and stop times—with no rounding up or down, as was alleged to have been utilized in Defendants' time keeping practices—and (b) each individual's allegations regarding the frequency with which a Plaintiff did not take bona-fide 30-minue meal breaks each week. Significantly, one of Defendants' key defenses relied upon Allied Aviation's "No Lunch Policy" and the Company's related "No Lunch Time – Reimbursement" Form, a policy which Defendants published to employees at Miami International Airport—and which Form was completed even by employees participating in this case. This defense was particularly important in the ultimate consideration of settlement in this matter, as 65% of the value of Plaintiffs' and Opt-In Plaintiffs' overall claims, were, on average, predicated upon their missed meal break allegations.

Based upon the foregoing, while the specific dollar amounts Defendants have agreed to pay the named Plaintiffs and each Opt-In Plaintiff to resolve their individual claims are delineated in the Parties' confidential Settlement Agreement, the parties' jointly submit that the compromise to resolve Plaintiffs' underlying claims is a fair and reasonable resolution of the dispute between the Parties. Throughout the fifteen (15) months of the instant litigation, all parties have been represented by counsel, Defendants vehemently defended and contested Plaintiffs' claims, and ultimately a compromise was reached that provides substantial recovery to the named Plaintiffs and all Opt-In Plaintiffs after taking into account the risks and costs associated with litigating this matter through trial and a potential appeal. As such, while Defendants continue to deny any wrongdoing and instead have agreed to pay Plaintiffs in order to fully extinguish their alleged claims in this action, both sides respectfully request the Court approve their settlement.

Likewise, the compromise for attorneys' fees and costs agreed upon by the Parties to be paid by Defendants under the Parties' Settlement Agreement, which compromise was arrived at by Plaintiffs' Counsel separately reviewing with Plaintiffs and Opt-In Plaintiffs their underlying FLSA claims distinct from the attorneys' fees and out-of-pocket costs of Plaintiffs' Counsel, is a significant reduction of the actual time and expense incurred in prosecuting Plaintiffs' claims. Pursuant to Eleventh Circuit precedent and as the Middle District of Florida explained in *Bonetti v. Embarq Management Co.,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.  However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach." *Id.*

Here, Defendants have agreed to pay compromise consideration to resolve Plaintiffs' attorneys' fees and costs as set forth in the Parties' confidential Settlement Agreement, despite the overall attorneys' fees that have been incurred on behalf of the (2) named Plaintiffs and seventeen (17) Opt-In Plaintiffs' totaling $94,012.50, inclusive of 196.70 hours of lead counsel for Plaintiffs, Keith M. Stern, Esquire at the rate of $300.00/hour ($59,010.00) along with 15.60 hours of Gregg I. Shavitz, Esquire at the rate of $350.00/hour ($5,460.00), 25.00 hours of Andrew Glenn, Esquire at the rate of $350.00/hour ($8,750.00), 32.00 hours of Camar Jones, Esquire at the rate of $275.00/hour ($8,800.00), and 159.90 paralegal hours at the rate of $75.00/hour ($11,992.50).  In addition, Plaintiffs' costs include $10,207.25 between the filing

6

fee ($400.00), service of process ($80.00), translation services ($255.00), deposition/conference facilities for Plaintiffs' group meetings adjacent to Miami International Airport ($588.50), FedEx, postage & delivery charges ($1,034.00), document reproduction and photocopying ($1,240.00), data entry ($3,204.00), legal research ($1,362.00), conference calls ($450.00), and Mediator's fees ($1,593.75). Nonetheless, the compromise for Plaintiffs' attorneys' fees and costs to be paid by Defendants under the Parties' settlement is being accepted in resolution of all attorneys' fees and costs owed to Plaintiffs' Counsel, such that the named Plaintiffs and Opt-In Plaintiffs have no obligation for any out-of-pocket amounts.

Finally the parties jointly advise the Court that the settlement reached in this case did not involve coercion, collusion or undue influence, but rather was arrived at through independent but extensive negotiation between the parties and lengthy discussions with the direction, input, and authorization of the named Plaintiffs, all Opt-In Plaintiffs, and Defendants. In addition, the parties further advise the Court that their Settlement Agreement reflects each and every term and condition of the Parties' settlement.

**IV**.   **Conclusion**

Based upon the foregoing, the Parties respectfully request the Court dismiss this case with prejudice, retaining jurisdiction solely for purposes of enforcing the terms of their Settlement Agreement.

RESPECTFULLY SUBMITTED, this 28th day of November, 2014.

| | |
|---|---|
| **/s/KEITH M. STERN**<br>Keith M. Stern, Esq.<br>Florida Bar No. 321000<br>E-mail: kstern@shavitzlaw.com<br>Gregg I. Shavitz, Esq.<br>Florida Bar No.: 11398<br>E-mail: gshavitz@shavitzlaw.com<br>SHAVITZ LAW GROUP, P.A.<br>1515 South Federal Highway, Suite 404<br>Boca Raton, FL 33432<br>Telephone: (561) 447-8888<br>Facsimile:  (561) 447-8831<br><br>Andrew Ira Glenn, Esq.<br>Florida Bar No. 577261<br>Email: aglenn@jaffeglenn.com<br>Jodi J Jaffe, Esq.<br>Florida Bar No. 865516<br>Email: jjaffe@jaffeglenn.com<br>JAFFE GLENN LAW GROUP, P.A.<br>Lawrence Office Park<br>Building 2, Suite 220<br>168 Franklin Corner Road<br>Lawrenceville, New Jersey 08648<br>Tel (201) 687-9977<br>Fax (201) 595-0308<br>*Attorneys for Plaintiffs and Opt-In Plaintiffs* | **s/DONNA M. GRIFFIN**<br>Donna Maria Griffin, Esq.<br>Email: donna@suarezgriffin.com<br>SUAREZ GRIFFIN, PL<br>14115 Stilton Street<br>Tampa, FL 33626<br>Tel: (813) 433-9003<br>Fax: (813) 287-5757<br>*Attorneys for Defendants* |